IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARCUS LYONS, ) | |
| ) | FILED: SEPTEMBER 4 , 2008 |
| Plaintiff, ) | 08CV5063 |
| ) | JUDGE GUZMAN |
| v. ) | MAGISTRATE JUDGE ASHMAN |
| ) | NF |
| VILLAGE OF WOODRIDGE, Woodridge ) | |
| Police Officers JAMES GRADY and ) | |
| JANUS as well as OTHER UNKNOWN ) | |
| WOODRIDGE POLICE OFFICERS, and ) | |
| RICHARD O'BRIEN, ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

### COMPLAINT

NOW COMES Plaintiff, MARCUS LYONS, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, VILLAGE OF WOODRIDGE, Woodridge Police Officer JAMES GRADY, Woodridge Police Officer JANUS, and other as-yet UNKNOWN WOODRIDGE POLICE OFFICERS, as well as Richard O'Brien (collectively, the "Defendants"), states as follows:

#### Introduction

1. Plaintiff Marcus Lyons was wrongfully convicted of a rape that he did not commit, a crime for which he served three years of wrongful incarceration. More than a decade after his conviction and sentence, Mr. Lyons has been exonerated by DNA testing.

2. Mr. Lyons presently brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of his rights as secured by the United States Constitution.

**Jurisdiction and Venue**

3. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

**Plaintiff Marcus Lyons**

5. Plaintiff, Marcus Lyons, is a 50 year-old resident of the State of Indiana.

6. After graduating from high school in the mid-1970s, Mr. Lyons attended Michiana College, where he earned an associates degree in computers and accounting.

7. After earning his degree, Mr. Lyons enlisted in the United States Navy. He spent three years in active service, and then three more as an active reservist, whereupon he received his honorable discharge.

8. In 1987, Mr. Lyons worked as a computer operator for Bell Labs. His intention was to finish his education and return to active service in the Navy, where he planned to work toward the rank of an officer.

9. To that end, Mr. Lyons reenlisted as an inactive reservist, and also enrolled in Wheaton College, where he began working toward a bachelor's degree in computer science.

10. Mr. Lyons later transferred to DuPage College, where he took classes at night while continuing to work for Bell Labs during the daytime.

11. At the time of the wrongful conviction described herein, Mr. Lyons was one year away from receiving his bachelor's degree in computer science. He had no prior criminal record.

**Basis For The Claim**

12. On November 30, 1987, a woman named Rebecca Auten reported to the police that she had been raped in her apartment in Woodridge, Illinois by an African American man.

13. According to Ms. Auten, her attacker had claimed to be "Mr. Williams from downstairs."

14. The resulting investigation was undertaken by Police Officers Grady and Janus, as well as other as-yet unidentified officers, all of whom are or were police officers employed by the Village of Woodridge.

15. Ms. Auten' original physical description of the assailant was dissimilar to Mr. Lyons. For example, the assailant had a large belly and hips, whereas Mr. Lyons was very slim and wore Navy-issued pants with a 32-inch waist. Ms. Auten also claimed to have burned the assailant's coat with a cigarette, but Mr. Lyons' coat had no burn marks.

16. At the time that this crime was reported, Mr. Lyons was the only African American man living in the apartment complex where the crime occurred.

17. After speaking to witnesses, the Defendants concluded that Mr. Lyons was the perpetrator of the crime.

18. The Defendants proceeded to procure a faulty identification of Mr. Lyons through unduly suggestive photographic line-up identification procedures.

19. After procuring this flawed identification through illegitimate means, the Defendants asked Mr. Lyons if he would submit to blood and saliva tests, and appear in a lineup. Because he was innocent of the crime, Mr. Lyons agreed.

20. At the resulting live line-up, the Defendants procured another faulty identification of Mr. Lyons under unduly suggestive circumstances.

21. Thereafter, Mr. Lyons was asked to take a polygraph examination. Having nothing to hide, Mr. Lyons agreed.

22. Mr. Lyons answered all questions truthfully during the polygraph examination, which was administered by Defendant O'Brien in conjunction with Defendant Grady.

23. Notwithstanding the truth of Mr. Lyons' answers to the polygraph questions about the rape, the Defendants falsely reported that Mr. Lyons was deceptive. These Defendants knew, or should have known, that the polygraph charts created by the polygraph machine in this case demonstrated that Mr. Lyons was not being deceptive.

24. In order to build a false case against him, the Defendants also fabricated evidence which falsely implicated Mr. Lyons in the crime, and destroyed and/or otherwise withheld from the State's Attorney and from Mr. Lyons evidence which would have helped exonerate him, all in violation of the constitution.

25. In so doing, Defendants, acting personally as well by and through conspiracy with others, coached and manipulated witnesses, and then withheld from the prosecutors the details of how they had done so.

26. As set forth more fully above, Defendants also utilized unduly suggestive procedures resulting in a faulty eyewitness identification which, when introduced at trial, deprived Mr. Lyons of due process.

27. The Defendants also caused Plaintiff to be charged with the rape, notwithstanding the lack of genuine probable cause for said charges.

28. As a complaining witnesses, one or more of the Defendants also testified falsely about Mr. Lyons' purported guilt at Mr. Lyons' criminal trial.

29. The totality of Defendants' misconduct in Mr. Lyons' criminal case was so egregiously abusive that it shocks the conscience.

### Plaintiff's Wrongful Conviction

30. In June of 1988, Mr. Lyons was tried for the crime, and wrongfully convicted.

31. Mr. Lyons was sentenced to six years in prison. Though he completed his sentence in half the time due to good behavior credit, Mr. Lyons experienced substantial emotional distress as a result of his wrongful incarceration.

### Post-Release Activities

32. After his release from prison, Mr. Lyons completed a one-year certification program in water and waste water treatment at Southern Illinois University in Edwardsville.

33. Though it was difficult to find employment due to his status as a convicted sex offender, he eventually found a job with the Gary Sanitary district, where he worked for three years.

34. Thereafter, Mr. Lyons was hired by the Shedd Aquarium in Chicago. His job lasted only one month, however, because he was terminated once his employer learned that he was a convicted sex offender.

35. Mr. Lyons spent the next several years washing cars and delivering pizzas to make ends meet while searching unsuccessfully for work commensurate with his abilities and educational background.

36. Finally, Mr. Lyons got a job as a sewage treatment operator at a private company. He has worked full-time for that company for the past twelve years.

### Mr. Lyons' Exoneration

37. Mr. Lyons never gave up his attempts to prove his innocence of the crime for which he was wrongfully convicted. After paying more than $10,000 out of his own pocket, Mr. Lyons successfully petitioned for DNA testing on the physical evidence from the criminal case.

38. On January 10, 2007, the state crime lab confirmed that Mr. Lyons was not the source of the DNA collected from the victim's bra. Mr. Lyons proceeded to file a petition for post-conviction relief based on evidence of actual innocence.

39. The petition was granted, and on September 18, 2007, the State dropped all of the charges against Mr. Lyons.

40. In contemporaneous comments about the case, DuPage State's Attorney Joseph Birkett (who had been the same assistant prosecutor who tried the case back in 1988) stated: "As far as I'm concerned, Marcus Lyons deserves to have his record cleared."

**Defendants' Misconduct**

41. In the manner described above, Defendants violated Plaintiff's constitutional rights, causing him damage. Among others, Defendants violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

42. Defendants' conduct also constitutes state law malicious prosecution and intentional infliction of emotional distress in that they caused Plaintiff to be prosecuted for a crime he did not commit, all without probable cause.

43. Defendants also reached an agreement to deprive Plaintiff of his constitutional rights via illicit means, and one or more of them took actions in furtherance of this conspiracy, all in violation of both state and federal law.

44. The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

45. The misconduct described in the foregoing paragraphs was undertaken pursuant to a routine practice on the part of the Village of Woodridge, so well-settled and ingrained as to constitute the Village's policy and practice. In this way, Plaintiff's injuries were proximately caused by a policy and practice on the part of the Village of Woodridge to procure wrongful convictions through flawed investigations. The Village of Woodridge violated Plaintiff's rights by maintaining policies and practices which were the moving force driving the foregoing constitutional violations.

46. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Woodridge Police Department, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

47. The widespread practices described in the preceding paragraphs were allowed to flourish because the Village declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of this type of misconduct was, and is, for all practical purposes, nonexistent. As a result, officers are led to believe that they can act with impunity, thereby encouraging the very type of abuses which befell Plaintiff.

48. All of Defendants' interactions with Plaintiff and the criminal case brought against him were undertaken under color of law, and within the scope of their employment.

49. Because each of the Defendants acted within the scope of their employment, the Village of Woodridge is therefore liable as their employer for any resulting damages and award of attorneys' fees.

**JURY DEMAND**

Plaintiff, MARCUS LYONS, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                                      RESPECTFULLY SUBMITTED:

                                      _____
                                      Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Mike Kanovitz
Gayle Horn
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900