12158

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARCUS LYONS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 08 CV 05063 |
| VILLAGE OF WOODRIDGE, Woodridge | ) |
| Police Officers JAMES GRADY and | ) Judge Ronald Guzman |
| JANUS as well as OTHER UNKNOWN | ) |
| WOODRIDGE, POLICE OFFICERS, and | ) |
| RICHARD O'BRIEN, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS, VILLAGE OF WOODRIDGE, WOODRIDGE POLICE OFFICERS JAMES GRADY AND DONALD JANUS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COME, Defendants, VILLAGE OF WOODRIDGE, WOODRIDGE POLICE OFFICERS JAMES GRADY and DONALD JANUS, by and through one of their attorneys, James L. DeAno, Laura L. Scarry, Howard P. Levine, Scott B. Dolezal and Patrick F. Moran of DeANO & SCARRY, and for their Answer and Affirmative Defenses to Plaintiff's Complaint, state as follows:

### Introduction

1. Plaintiff Marcus Lyons was wrongfully convicted of a rape that he did not commit, a crime for which he served three years of wrongful incarceration. More than a decade after his conviction and sentence, Mr. Lyons has been exonerated by DNA testing.

ANSWER: On information and belief, Plaintiff has been exonerated by the State of Illinois for the crime in question, but pleading further, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1.

2. Mr. Lyons presently brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of his rights as secured by the United States Constitution.

ANSWER: Defendants admit that plaintiff brings this action pursuant to statute, but deny that these defendants engaged in acts that deprived plaintiff any of his rights.

## Jurisdiction and Venue

3. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331

ANSWER: Defendants admit the allegations of paragraph 3.

4. Venue is proper under 28 U.S.C.1391(b). On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

ANSWER: Defendants admit the allegations of paragraph 4.

## Plaintiff Marcus Lyons

5. Plaintiff, Marcus Lyons, is a 50 year-old resident of the State of Indiana.

ANSWER: Defendants admit the allegations of paragraph 5.

6. After graduating from high school in the mid-1970s, Mr. Lyons attended Michiana College, where he earned an associates degree in computers and accounting.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7. After earning his degree, Mr. Lyons enlisted in the United States Navy. He spent three years in active service, and then three more as an active reservist, whereupon he received his honorable discharge.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.  In 1987, Mr. Lyons worked as a computer operator for Bell Labs. His intention was to finish his education and return to active service in the Navy, where he planned to work toward the rank of an officer.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8.

9.  To that end, Mr. Lyons reenlisted as an inactive reservist, and also enrolled in Wheaton College, where he began working toward a bachelor's degree in computer science.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9.

10.  Mr. Lyons later transferred to DuPage College, where he took classes at night while continuing to work for Bell Labs during the daytime.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10.

11.  At the time of the wrongful conviction described herein, Mr. Lyons was one year away from receiving his bachelor's degree in computer science. He had no prior criminal record.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

**Basis For The Claim**

12.  On November 30, 1987, a woman named Rebecca Auten reported to the police that she had been raped in her apartment in Woodridge, Illinois by an African American man.

ANSWER: Defendants admit the allegations of paragraph 12.

13. According to Ms. Auten, her attacker had claimed to be "Mr. Williams from downstairs."

ANSWER: Defendants admit the allegations of paragraph 13.

14. The resulting investigation was undertaken by Police Officers Grady and Janus, as well as other as-yet unidentified officers, all of whom are or were police officers employed by the Village of Woodridge.

ANSWER: Defendants admit that Defendants Grady and Janus undertook the investigation and deny the remaining allegations of paragraph 14.

15. Ms. Auten' original physical description of the assailant was dissimilar to Mr. Lyons. For example, the assailant had a large belly and hips, whereas Mr. Lyons was very slim and wore Navy-issued pants with a 32-inch waist. Ms. Auten also claimed to have burned the assailant's coat with a cigarette, but Mr. Lyons' coat had no burn marks.

ANSWER: Defendants admit that Ms. Autin's original description of the assailant included a large belly and hips and that she stated that she "attempted" to burn the assailant, pleading further, defendants state that Plaintiff did not appear to have a large belly and hips and had no burn marks visible to defendants.

16. At the time that this crime was reported, Mr. Lyons was the only African American man living in the apartment complex where the crime occurred.

ANSWER: Defendants deny the allegations of paragraph 16.

17. After speaking to witnesses, the Defendants concluded that Mr. Lyons was the perpetrator of the crime.

ANSWER: Defendants deny the allegations of paragraph 17.

4

18. The Defendants proceeded to procure a faulty identification of Mr. Lyons through unduly suggestive photographic line-up identification procedures.

ANSWER: Defendants deny the allegations of paragraph 18.

19. After procuring this flawed identification through illegitimate means, the Defendants asked Mr. Lyons if he would submit to blood and saliva tests, and appear in a lineup. Because he was innocent of the crime, Mr. Lyons agreed.

ANSWER: Defendants admit that they asked Plaintiff to submit to blood and saliva tests, and appear in a lineup and that Plaintiff agreed to do so, pleading further, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19.

20. At the resulting live line-up, the Defendants procured another faulty identification of Mr. Lyons under unduly suggestive circumstances.

ANSWER: Defendants deny the allegations of paragraph 20.

21. Thereafter, Mr. Lyons was asked to take a polygraph examination. Having nothing to hide, Mr. Lyons agreed.

ANSWER: Defendants admit that Plaintiff agreed to take a polygraph examination, pleading further, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21.

22. Mr. Lyons answered all questions truthfully during the polygraph examination, which was administered by Defendant O'Brien in conjunction with Defendant Grady.

ANSWER: Defendants deny that Defendant Grady administered the polygraph test in conjunction with Defendant O'Brien, and pleading further, are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22.

5

23. Notwithstanding the truth of Mr. Lyons' answers to the polygraph questions about the rape, the Defendants falsely reported that Mr. Lyons was deceptive. These Defendants knew, or should have known, that the polygraph charts created by the polygraph machine in this case demonstrated that Mr. Lyons was not being deceptive.

ANSWER:    Defendants deny the allegations of paragraph 23.

24. In order to build a false case against him, the Defendants also fabricated evidence which falsely implicated Mr. Lyons in the crime, and destroyed and/or otherwise withheld from the State's Attorney and from Mr. Lyons evidence which would have helped exonerate him, all in violation of the constitution.

ANSWER:    Defendants deny the allegations of paragraph 24.

25. In so doing, Defendants, acting personally as well by and through conspiracy with others, coached and manipulated witnesses, and then withheld from the prosecutors the details of how they had done so.

ANSWER:    Defendants deny the allegations of paragraph 25.

26. As set forth more fully above, Defendants also utilized unduly suggestive procedures resulting in a faulty eyewitness identification which, when introduced at trial, deprived Mr. Lyons of due process.

ANSWER:    Defendants deny the allegations of paragraph 26.

27. The Defendants also caused Plaintiff to be charged with the rape, notwithstanding the lack of genuine probable cause for said charges.

ANSWER:    Defendants deny the allegations of paragraph 27.

28. As a complaining witnesses, one or more of the Defendants also testified falsely about Mr. Lyons' purported guilt at Mr. Lyons' criminal trial.

ANSWER:    Defendants deny the allegations of paragraph 28.

29.    The totality of Defendants' misconduct in Mr. Lyons' criminal case was so egregiously abusive that it shocks the conscience.

ANSWER:    Defendants deny the allegations of paragraph 29.

### Plaintiff's Wrongful Conviction

30.    In June of 1988, Mr. Lyons was tried for the crime, and wrongfully convicted.

ANSWER:    Defendants admit that Plaintiff was tried and convicted, pleading further, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

31.    Mr. Lyons was sentenced to six years in prison. Though he completed his sentence in half the time due to good behavior credit, Mr. Lyons experienced substantial emotional distress as a result of his wrongful incarceration.

ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

### Post-Release Activities

32.    After his release from prison, Mr. Lyons completed a one-year certification program in water and waste water treatment at Southern Illinois University in Edwardsville.

ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

33.    Though it was difficult to find employment due to his status as a convicted sex offender, he eventually found a. job with the Gary Sanitary district, where he worked for three years.

ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.

34.     Thereafter, Mr. Lyons was hired by the Shedd Aquarium in Chicago. His job lasted only one month, however, because he was terminated once his employer learned that he was a convicted sex offender.

ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

35.     Mr. Lyons spent the next several years washing cars and delivering pizzas to make ends meet while searching unsuccessfully for work commensurate with his abilities and educational background.

ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36.     Finally, Mr. Lyons got a job as a sewage treatment operator at a private company. He has worked full-time for that company fox the past twelve years.

ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

## Mr. Lyons' Exoneration

37.     Mr. Lyons never gave up his attempts to prove his innocence of the crime for which he was wrongfully convicted. After paying more than $10,000 out of his own pocket, Mr. Lyons successfully petitioned for DNA testing on the physical evidence from the criminal case.

ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38.     On January 10, 2007, the state crime lab confirmed that Mr. Lyons was not the source of the DNA collected from the victim's bra. Mr. Lyons proceeded to file a petition for post-conviction relief based on evidence of actual innocence.

ANSWER:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38.

39.   The petition was granted, and on September 18, 2007, the State dropped all of the charges against Mr. Lyons.

ANSWER:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39.

40.   In contemporaneous comments about the case, DuPage State's Attorney Joseph Birkett (who had been the same assistant prosecutor who tried the case back in 1988) stated: "As far as I'm concerned, Marcus Lyons deserves to have his record cleared."

ANSWER:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.

## Defendants' Misconduct

41.   In the manner described above, Defendants violated Plaintiff's constitutional rights, causing him damage. Among others, Defendants violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

ANSWER:   Defendants deny the allegations of paragraph 41.

42.   Defendants' conduct also constitutes state law malicious prosecution and intentional infliction of emotional distress in that they caused Plaintiff to be prosecuted for a crime he did not commit, all without probable cause.

ANSWER:   Defendants deny the allegations of paragraph 42.

43.   Defendants also reached an agreement to deprive Plaintiff of his constitutional rights via illicit means, and one or more of them took actions in furtherance of this conspiracy, all in violation of both state and federal law.

ANSWER: Defendants deny the allegations of paragraph 43.

44. The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

ANSWER: Defendants deny the allegations of paragraph 44.

45. The misconduct described in the foregoing paragraphs was undertaken pursuant to a routine practice on the part of the Village of Woodridge, so well-settled and ingrained as to constitute the Village's policy and practice. In this way, Plaintiff's injuries were proximately caused by a policy and practice on the part of the Village of Woodridge to procure wrongful convictions through flawed investigations. The Village of Woodridge violated Plaintiff's rights by maintaining policies and practices which were the moving force driving the foregoing constitutional violations.

ANSWER: Defendants deny the allegations of paragraph 45.

46. The above-described widespread practices, so well-settled as to constitute de facto policy in the Woodridge Police Department, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

ANSWER: Defendants deny the allegations of paragraph 46.

47. The widespread practices described in the preceding paragraphs were allowed to flourish because the Village declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of this type of misconduct was, and is, for all practical purposes, nonexistent. As a result, officers are led to believe that they can act with impunity, thereby encouraging the very type of abuses which befell Plaintiff.

ANSWER:   Defendants deny the allegations of paragraph 47.

48.   All of Defendants' interactions with Plaintiff and the criminal case brought against him were undertaken under color of law, and within the scope of their employment.

ANSWER:   Defendants deny the allegations of paragraph 48.

49.   Because each of the Defendants acted within the scope of their employment, the Village of Woodridge is therefore liable as their employer for any resulting damages and award of attorneys' fees.

ANSWER:   Defendants admit that Defendants Grady and Janus at all times acted within the scope of their employment, but pleading further, deny the remaining allegations of paragraph 49.

## AFFIRMATIVE DEFENSES

NOW COME Defendants, Village of Woodridge, James Grady and Donald Janus and pleading in the affirmative, aver the following affirmative defenses:

1. Defendants Grady and Janus are entitled to qualified immunity on all Federal claims for the reason that they did not violate any clearly established law and their conduct did not deviate from the conduct of an objectively reasonable officer acting under the same or similar facts and circumstances.

2. Defendants Grady and Janus are entitled to absolute immunity on all claims arising from any pretrial or trial testimony they gave.

3. As to the section 1983 claim wherein Plaintiff seeks recovery of attorney's fees, the Village of Woodridge is not obligated to indemnify any award of attorneys' fees made against any of its employees or officers. *Yang v City of Chicago*, 195 Ill2d 96 (2001).

4. As to all state and Federal claims, Plaintiff's is barred from recovery against these Defendants by reason of the finding of probable cause which resulted in Plaintiff's indictment and the finding of guilt by a jury which resulted in Plaintiff's conviction.

5. On all state claims, Defendants are entitled to immunity for the reason that they exercised discretion and conducting the investigation of the criminal offense in question.745 ILCS 10/2-201, 745 ILCS 10/2-109

6. On all state claims, Defendants are entitled to immunity for the reason that they were executing or enforcing the law at all times while conducting the investigation of the criminal offense in question. 745 ILCS 10/2-202, 745 ILCS 10/2-109

7. On all state claims, Defendants are entitled to immunity for the reason that probable cause supported the arrest of and charges brought against Plaintiff. 745 ILCS 10/2-208, 745 ILCS 10/2-109.

8. On all state claims, Defendants are entitled to immunity for the reason that they are not liable for inadequate police investigation. 745 ILCS 10/4-102, 745 ILCS 10/2-109.

9. On all state claims, defendants are not liable for any damages caused by the acts and omissions of another person. 745 ILCS 10/2-204, 745 ILCS 10/2-109.

WHEREFORE, the Defendants, respectfully request that judgment be entered in their favor and that this Court award costs and any other relief deemed reasonable and just.

    Respectfully submitted,

    DeANO & SCARRY, LLC

        s/James L. DeAno
    Attorney for Defendants, VILLAGE OF WOODRIDGE,
    WOODRIDGE POLICE OFFICERS JAMES GRADY
    and DONALD JANUS

13

James L. DeAno #6180161
Laura L. Scarry  #6231266
Scott B. Dolezal  #6274826
Patrick F. Moran #6279297
DeAno & Scarry, LLC
2100 Manchester Road
Suite A-101
Wheaton, I 60604
(630) 690-2800
Fax:  (630) 690-2853